UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARIA M. ACEVEDO,

     Plaintiff,

          v.                      No. 3:15-cv-0054(WIG)

CAROLYN COLVIN,
Acting Commissioner of
Social Security,

     Defendant.
_____X

**RECOMMENDED RULING ON PENDING MOTIONS**

     Plaintiff Maria Acevedo has filed this appeal of the adverse decision of the

Commissioner of Social Security denying her application for supplemental security income

benefits ("SSI").  Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing this

decision, or in the alternative remanding the matter for rehearing.  [Doc. # 11].  Defendant has

responded with a motion to affirm the decision of the Commissioner.  [Doc. # 12].  The

undersigned heard oral argument in this case on February 23, 2016.[1]  For the reasons set forth

below, the Court recommends that the decision of the Commissioner should be reversed and the

matter remanded for additional proceedings consistent with this Ruling.

**Background**

     Plaintiff's SSI application alleged a disability onset date of July 8, 2011.  Her claim was

denied initially and upon reconsideration.  A hearing was scheduled before Administrative Law

Judge Matthew Kuperstein (the "ALJ") for December 5, 2012; the ALJ postponed the hearing to

---

[1] Counsel for both sides presented well-formulated and thoughtful arguments at the hearing.
This case was a close call, but ultimately the Court has determined that recommending remand is
the best course.

give Plaintiff, who was proceeding *pro se*, the opportunity to obtain representation.  Plaintiff

appeared without counsel on April 11, 2013, and the hearing was conducted.  On September 4,

2013, the ALJ issued an unfavorable decision.  The Appeals Council denied review, making the

ALJ's decision the final decision of the Commissioner for appeals purposes.  This action

followed.

Plaintiff was 46 years of age on the alleged onset date.  She has completed up through the

ninth grade in school and has no past relevant work experience.  Plaintiff's primary language is

Spanish.  At oral argument the parties stipulated to Plaintiff's medical background as presented

in both briefs.  The Court adopts these facts and incorporates them by reference herein.

## Legal Standard

The standards for determining a claimant's entitlement to disability benefits, the

Commissioner's five-step framework for evaluating disability claims, and the district court's

review of the Commissioner's final decision are well-established.  The Court is following those

standards, but does not repeat them here.

## The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since the alleged onset date.  (R. 29).  At step two, the ALJ found the following severe

impairments: depressive disorder and history of substance abuse (in remission)[2].  (*Id.*).  At step

three, the ALJ found that these impairments, alone or in combination, did not meet or equal the

severity of one of the listed impairments.  (R. 29-30).  The ALJ then found that Plaintiff retained

the following residual functional capacity[3]:

---

[2] The ALJ found as not severe Plaintiff's asthma, leg swelling, and back pain.
[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite
her limitations.  20 C.F.R. § 416.945(a)(1).

> Plaintiff can perform a full range of light work at all exertion levels with the
> following nonexertional limitations: she is able to understand, remember, and
> carry out simple work; she is limited to work that involves no interaction with the
> general public and only brief and superficial interaction with coworkers and
> supervisors.

(R. 31-34).  At step four, the ALJ found Plaintiff had no past relevant work.  (R. 34).  Finally, at

step five, the ALJ used the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P,

Appendix 2 (the "Grids") to conclude that there were jobs in significant numbers in the national

economy Plaintiff could perform.  (R. 35).  Accordingly, the ALJ found Plaintiff to be not

disabled.

## Discussion

When Plaintiff arrived for the December 5, 2012 hearing, the following interaction

occurred (with the services of an interpreter):

**AJL:** As you are not represented, I must ensure on the record that you understand your
rights to representation.  Did you receive the hearing acknowledgement letter, and its
enclosures?

**CLMT:** No.

**ALJ:** Do you understand the information contained in the letter concerning
representation?  Okay, I see you shaking your head, Ms. Acevedo.  Can you speak up?
I can't record a shaking of the head.

**CLMT:** No.

**ALJ:** Okay, the information in the letter was as follows.  You have the right to be
represented by an attorney or non-attorney.

**CLMT:** Yeah, I called an attorney office.

**ALJ:** Okay.  Do you – do you wish to proceed without a representative, or do you want
a chance to get a representative?

**CLMT:** Well, if I have an attorney, it would be much better.

**ALJ:** That's a decision you'll need to make for yourself.

**CLMT:** Yes.

**ALJ:** Okay.  We're going to go – I have a form that I'd like you to complete.  It's titled Acknowledgement of Postponement in Order to Obtain Representation.  It states, "I have requested a postponement of my hearing so that I may obtain a representative to help me in my claim for benefits."  It states that you understand you are entitled to have only one postponement in order to obtain a representative either an attorney or otherwise qualified representative, and that any subsequent hearing will be scheduled at least 20 days from today.  It further states that you've been advised both orally and in writing that if you do not have a representative by the next scheduled hearing, you must be prepared to proceed with the hearing without a representative, and absent extraordinary circumstances, no further postponement will be granted in order for me to get – in order for you to get a representative.  I'm going to pass this to you through the hearing reporter for your signature.

(R. 46-49).  Plaintiff then signed and dated the postponement form.  (R. 49).

At the April 11, 2013 hearing, the following exchange occurred (againwith the services

of an interpreter):

**ALJ:** Ms. Acevedo, we previously had a hearing scheduled for you on December 5th, 2012.

**CLMT:** Yes.

**ALJ:** At that time you asked for a postponement in order to obtain representation.

**CLMT:** Yes.

**ALJ:** Today you're at the hearing. And you don't have a representative.  Is there – is there a reason, you know, why I should not proceed with the hearing without you having a representative?

**CLMT:** I do have – I do have a list of attorneys that I tried to contact.

**ALJ:** I did not understand what you just said to me.  Can you say that again please, interpreter?

**CLMT:** I do have a list of attorneys that I tried to contact. [4]

---

[4] It would have been helpful for the ALJ to have asked for a copy of this list and incorporated it into the record.  Without this information, one is left wondering which attorneys Plaintiff contacted, where they were located, and their areas of expertise, information that would have been helpful in ascertaining the extent to which Plaintiff understood or failed to understand the actual meaning of her right to representation.

**ALJ:** So none of the attorneys that you contacted were willing to take your case?

**CLMT:** Yeah, some of them – some of them told me that they didn't take care of disability issues.

**ALJ:** As it's been four months – over four months since you've had an opportunity to get an attorney, and – and you still have not found an attorney and do not have an attorney, I am going to proceed today without an attorney.

**CLMT:** Okay.

(R. 55-56).

"Although a claimant does not have a constitutional right to counsel at a social security disability hearing, she does have a statutory and regulatory right to be represented should she choose to obtain counsel." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1705). When a claimant is properly informed of this right to representation, she may waive it. *Id.* Pursuant to 42 U.S.C.A. § 406 (c),

> The Commissioner of Social Security shall notify each claimant in writing, together with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security. Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge.

"Moreover, at the hearing itself, the ALJ must ensure that the claimant is aware of [her] right [to counsel]." *Lamay*, 562 F.3d at 507 (internal quotation marks omitted). Under *Lamay*, a claimant is "not entitled to additional notice of her right to counsel beyond that required by 42 U.S.C. § 406(c)." *Flores v. Astrue*, No. 08 CIV. 2810 (PKC), 2009 WL 1562854, at *8 (S.D.N.Y. May 27, 2009).

In this case, despite the mailings sent by the SSA to Plaintiff concerning her right to be represented, the ALJ failed to ensure that Plaintiff actually understood her right and that she was knowingly and voluntarily waiving it. Several factors underlie this finding: First, Plaintiff had

5

limited ability to communicate in English.  Although the ALJ found that Plaintiff could
communicate in English (*see* R. 34), the Court questions this finding because the Plaintiff
testified at the hearing, through the interpreter, that she could not read or write in English, and
was not able to communicate in English.  (R. 63).  Further, an undated disability report, which
appears to be completed with information provided by Plaintiff, responds "yes" to the question
"Can you speak and understand English? ," but "no" to the questions "Can you read and
understand English?" and "Can you write more than your name in English?"  (R. 195).   In
addition, consultative examiner Dr. Lago reports Plaintiff can read and write in Spanish, and that
Plaintiff states she is monolingual Spanish speaking.  (R. 303, 335).

   Plaintiff's limited ability to communicate in English is significant because the prior
written notices sent to Plaintiff regarding her right to representation were provided only in
English.  (*See* R. 112-117, 125-126, 162-163).  This is the only information Plaintiff received
about the possibility of free legal services, or that some lawyers would not charge her unless she
received benefits.  While at the hearing the ALJ read, with the assistance of the interpreter, the
acknowledgement of postponement in order to obtain representation form, this form does not
include the information about the availability of legal services free of charge or on a contingency
fee basis.  (*See* R. 141).

   Counsel for the Commissioner argues that Plaintiff's attempts to contact an attorney
indicate that she understood her right to representation.  While Plaintiff did state she attempted to
contact attorneys, the hearing transcript also shows that at the first hearing Plaintiff mistakenly
believed that the vocational expert present was an attorney to represent her.  This misconception
signals that Plaintiff did not have a full understanding of what the right to representation actually

meant, including that she could have an attorney – with whom she had a relationship prior to the hearing – to present her case for her.

Finally, Plaintiff had limited education and had severe mental impairments. While not dispositive of whether a claimant can knowingly and voluntarily waiver her right to representation, these factors, along with the others, make the Court unable to confidently say that Plaintiff understood and knowingly waived her right to representation.

Other courts have held likewise. In *Collado v. Astrue*, No. 05-CV-3337 KMK/LMS, 2009 WL 2778664, at *11 (S.D.N.Y. Aug. 31, 2009), the court held that when an ALJ failed to "inquire into whether Plaintiff understood that she could retain representation free of charge or whether she was electing to proceed *pro se* willingly," the ALJ failed to ensure the plaintiff knowingly waiver her right to representation. The court reasoned as follows:

> Although the administrative record contains some information concerning the Plaintiff's statutory and regulatory right to representation, Plaintiff's limited education, her alleged mental impairments, and her limited command of the English language, at a minimum, required the ALJ to perform more than a perfunctory inquiry into whether Plaintiff "wish[ed] to go forward [ ] without an attorney[.]"

*Id.*

Similarly, in *Sheerinzada v. Colvin*, 4 F. Supp. 3d 481, 496 (E.D.N.Y. 2014), remand was ordered when "the ALJ only referred to the Plaintiff's right to have 'representation' without making clear that he was referring to representation by a lawyer," and the ALJ failed to advise the Plaintiff that she could be represented by an attorney for a fee or on a *pro bono* basis."

For the reasons discussed, the Court finds that Plaintiff was not properly informed of her right to counsel, and did not properly waive it.

When a claimant is denied the right to representation, remand is warranted only if the lack of representation resulted in prejudice or unfairness. *See Hynes v. Astrue*, No. 12-CV-719

JFB, 2013 WL 3244825, at *13 (E.D.N.Y. June 26, 2013).  In determining whether prejudice or

unfairness has occurred, "the courts have a duty to make a searching investigation of the record."

*Id.* (citing *Gold v. Sec'y of Health, Educ. & Welfare,* 463 F.2d 38, 43 (2d Cir.1972)).

"Determining whether a claimant was prejudiced is bound up in the inquiry of whether the ALJ

properly conducted the hearing and adequately developed the record in the manner the Second

Circuit requires in a pro se case."  *Flores v. Astrue*, No. 08 CIV. 2810 (PKC), 2009 WL

1562854, at *8 (S.D.N.Y. May 27, 2009) (internal quotation marks omitted).

Here, Plaintiff has demonstrated that prejudice resulted from her lack of representation.

First, the ALJ failed in his duty to fill in clear gaps in the administrative record.  For example,

the record indicates that Plaintiff arrived by ambulance to the Hospital of Saint Raphael on

January 30, 2012 reporting suicidal thoughts and auditory hallucinations.  (R. 305).  Plaintiff was

discharged from this admission on February 8, 2012.  (R. 317).  The only notes in the record

from this significant hospital stay are the intake report and the discharge summary, which

provide scant information to illuminate Plaintiff's mental impairments.  The record also indicates

that Plaintiff was hospitalized for 10 days following an asthma attack.  (R. 479).  Notes from this

hospitalization may provide information as to vocationally relevant factors such as exposure to

dust, fumes, etc. which may impact the RFC.

The ALJ also failed in adequately developing the record as it pertains to Plaintiff's

treating physician, Dr. Blanco.  The ALJ dismissed Dr. Blanco's opinion because she did "not

recite the evidence she relied on in expressing this opinion," and then accorded weight to the

results of the consultative examiner, Dr. Lago.  (R. 33).  The record indicates that Dr. Blanco

treated Plaintiff regularly from April 2012 onward, yet it contains no treatment notes beyond

April 9, 2012.  (R. 408).  Under the treating physician rule, a treating source's opinion on the

nature or severity of a claimant's impairments will be given controlling weight when it is well-supported by, and not inconsistent with, other substantial evidence in the record. *See* 20 C.F.R. § 416.927(c)(2). "Because of the considerable weight ordinarily accorded to the opinions of treating physicians, an ALJ's duty to develop the record on this issue is all the more important." *Rocchio v. Astrue*, No. 08 CIV 3796 JSR FM, 2010 WL 5563842, at \*11 (S.D.N.Y. Nov. 19, 2010) *report and recommendation adopted,* No. 08 CIV. 3796 JSR, 2011 WL 1197752 (S.D.N.Y. Mar. 28, 2011) (internal quotation marks omitted). The Commissioner argues that the ALJ asked for additional records from Dr. Blanco and that is sufficient. In this case, however, since the ALJ discounted the only opinion from a treating source because it was not consistent with opinions from non-treating consultants, the ALJ should have taken additional steps to "supplement and clarify his concerns regarding the treating physician's notes." *Castillo v. Colvin*, No. 13 CIV. 5089 AT MHD, 2015 WL 153412, at \*21 (S.D.N.Y. Jan. 12, 2015). This is particularly so because there was no evidence from another treating source contrary to the opinion of Dr. Blanco. "Courts may refuse to uphold an ALJ's decision to reject a treating physician's diagnosis merely on the basis that other examining doctors reported no similar findings." *Id.* Further, "the regulations clearly warn against reliance on a one-time consultative expert's opinion over the extensive records of a treating physician." *Id.* Thus, the ALJ failed in his duty to ensure that "all of the relevant facts [were] sufficiently developed and considered." *Samuel v. Comm'r of Soc. Sec.*, No. 14 CV 4634 PKC, 2015 WL 5774850, at \*14 (E.D.N.Y. Sept. 30, 2015) (internal quotation marks omitted).

Plaintiff was also prejudiced by lack of counsel at step five. As discussed above, the record is replete with evidence Plaintiff had limited ability to communicate in English, despite the ALJ's finding to the contrary. Counsel would have explored this issue at the hearing, and

may have insisted on obtaining testimony from a vocational expert to determine whether Plaintiff's lack of English skill would have impacting the number and types of jobs available to her. *Cf. Garcia v. Astrue*, No. 10 CV 5901 RJD, 2012 WL 3614334, at *3 (E.D.N.Y. Aug. 21, 2012) (remanding to have the ALJ present a new hypothetical to a vocational expert incorporating accurate information, including claimant's inability to communicate in English).

In all, Plaintiff's lack of counsel resulted in prejudice because an attorney would have assisted in ensuring that the administrative record was complete and accurate. An attorney also would have ensured that necessary evidence regarding Plaintiff's impairments and functional limitations were emphasized for the ALJ at the hearing. As such, the Court recommends that this case should be remanded to permit Plaintiff the opportunity to proceed with counsel.[5]

## Conclusion

After a thorough review of the administrative record and consideration of the arguments raised by the parties, the Court recommends that Plaintiff's motion to reverse and/or remand be granted and the Commissioner's motion to affirm be denied. This matter should be remanded to the ALJ for further proceedings in accordance with this opinion.

This is a Recommended Ruling. *See* Fed. R. Civ. P. 72(b)(1). Any objection to this Recommended Ruling must be filed within 14 days after service. *See* Fed. R. Civ. P. 72(b)(2). In accordance with the Standing Order of Referral for Appeals of Social Security Administration Decisions dated September 30, 2011, the Clerk is directed to transfer this case to a District Judge for review of the Recommended Ruling and any objections thereto, and acceptance, rejection, or

---

[5] Plaintiff also argues that the ALJ erred in rejecting the testimony provided by her daughter at the hearing. The Court has considered this argument and rejects it. Plaintiff's daughter was a non-treating, non-medical source whose opinion must be considered but is not entitled to any particular weight. The ALJ did so.

modification of the Recommended Ruling in whole or in part.  *See* Fed. R. Civ. P. 72(b)(3) and

D. Conn. Local  Rule 72.1(C)(1) for Magistrate Judges.

   The Clerk's Office is further instructed that, if any party appeals to this Court the

decision made after remand, any subsequent Social Security appeal is to be assigned to the

Magistrate Judge who issued the Recommended Ruling in this case, and then to the District

Judge who issued the Ruling that remanded the case.

   SO ORDERED, this   29th  day of February, 2016, at Bridgeport, Connecticut.


          */s/ William I. Garfinkel*
          WILLIAM I. GARFINKEL
          United States Magistrate Judge

11